*55 Chief Justice Roberts
delivered the opinion of the Court.
A federal habeas court will not review a claim rejected by a state court “if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.” Coleman v. Thompson, 501 U. S. 722, 729 (1991). We granted certiorari to decide the following question: “Is a state procedural rule automatically ‘inadequate’ under the adequate-state-grounds doctrine — and therefore unenforceable on federal habeas corpus review — because the state rule is discretionary rather than mandatory?” Pet. for Cert. i. Petitioners argue the correct answer is “no.” At oral argument, respondent — consistent with his position below — expressly agreed. We do too, and accordingly vacate the judgment of the Court of Appeals.
I
In 1982, Joseph Kindler, along with Scott Shaw and David Bernstein, burglarized a music store in Bucks County, Pennsylvania. Police stopped the getaway car and arrested Shaw and Bernstein. In a harbinger of things to come, Kindler escaped. Commonwealth v. Kindler, 536 Pa. 228, 236, 639 A. 2d 1, 5, cert. denied, 513 U. S. 933 (1994).
*56 Police later arrested Kindler and charged him with burglary. He was released on bail. Bernstein agreed to testify against Kindler, but Kindler had other plans. At about 2:30 a.m. on July 25, 1982, Kindler and Shaw attacked Bernstein outside his apartment. Kindler beat Bernstein with a baseball bat approximately 20 times, and Shaw shocked Bernstein 5 times with an electric prod. Bernstein at that point was still alive but unable to move, and Kindler and Shaw dragged their victim to their nearby car, loaded him in the trunk, and drove to the Delaware River. At the river, Kindler tied a cinder block around Bernstein’s neck and dumped him in the water. A forensic examiner later determined that Bernstein died of drowning and massive head injuries. 536 Pa., at 236-239, 639 A. 2d, at 5-6.
Kindler was brought to trial and convicted of capital murder. The jury recommended a death sentence, and Kindler filed postverdict motions. Id., at 230-231, 639 A. 2d, at 2.
But on September 19, 1984, before the trial court could consider the motions or the jury’s death recommendation, Kindler escaped. Ibid. In an organized effort to saw through the external prison bars with smuggled tools, Kindler broke out of the maximum-security wing of the prison and headed for Canada. See Commonwealth v. Kindler, 554 Pa. 513, 517-518, and n. 4, 722 A. 2d 143, 145, and n. 4 (1998).
Kindler remained a fugitive in Canada until April 26,1985, when he was arrested in Quebec for separate burglary offenses. The United States sought Kindler’s return, but an extradition treaty allowed Canada to refuse to hand over anyone likely to face execution. See Kindler v. Canada (Minister of Justice), [1991] 2 S. C. R. 779, 84 D. L. R. (4th) 438.
Kindler turned into something of a local celebrity. He even appeared on Canadian television, explaining, among other things, how he had escaped and why he chose Canada: “I knew there was no death penalty here.” CTV National News: Joseph Kindler’s Fate Unresolved (Canadian televi *57 sion broadcast Sept. 22, 1985) (videos available in Clerk of Court’s ease file). Canadian authorities ultimately acquiesced to overtures from the United States and agreed to extradite Kindler. Kindler, 536 Pa., at 231, 639 A. 2d, at 2.
But before Kindler could be transferred from Canadian custody, he escaped again. On the night of October 23, 1986, Kindler broke through a skylight on the 13th floor of the jail (his fellow inmates had hoisted him up to the skylight 15 feet above the floor) and escaped to the roof, where he stood 175 feet above ground. Armed with 13 stories’ worth of bedsheets tied together, Kindler safely rappelled down the side of the jail. (A fellow escapee was not as lucky — the sheets ripped on his way down, causing him to fall 50 feet to his death.) Kindler, 554 Pa., at 517-519, 722 A. 2d, at 145.
This time, Kindler remained on the lam for nearly two years, until he was featured on the popular television show, “America’s Most Wanted.” Characterizing Kindler as “an above average criminal” and “a chess player who understands when to make his move,” the show asked viewers for information to help capture him. America’s Most Wanted, Sept. 4, 1988, Season 1, Episode 30, at 10:01. Several viewers recognized Kindler and notified Canadian authorities, who arrested him in September 1988. 554 Pa., at 519, 722 A. 2d, at 145.
Kindler again fought extradition. On September 16,1991, after three years of litigation, the Supreme Court of Canada rejected Kindler’s efforts. See Kindler, [1991] 2 S. C. R. 779, 84 D. L. R. (4th) 438. That same day, Canadian officials extradited Kindler to the United States. Kindler v. Horn, 291 F. Supp. 2d 323, 334 (ED Pa. 2003).
In the meantime, in 1984, the Pennsylvania trial court had dismissed Kindler’s postverdict motions because of his original escape. Once back in the United States, Kindler filed a motion to reinstate those challenges to his conviction and sentence. The trial court denied the reinstatement motion, holding that the trial court judge who had dismissed the *58 postverdict motions in 1984 had not abused his discretion. In October 1991 — more than seven years after the jury’s death recommendation — the court formally imposed the death sentence. Commonwealth v. Kindler, No. 2747 etc. (Ct. Common Pleas, Feb. 28, 1992), App. 66-70.
Kindler appealed, arguing that the trial court erred in declining to address the merits of his postverdict motions. The Pennsylvania Supreme Court affirmed. Kindler, 536 Pa., at 232-234, 639 A. 2d, at 3. That court recognized that “trial courts, when faced with a defendant in fugitive status, . . . have every right to fashion an appropriate response[,] which can include the dismissal of pending post-verdict motions.” Id., at 233, 639 A. 2d, at 3. The court then determined that the trial court’s decision to dismiss Kindler’s claims fell within its authority: The “dismiss[al] [of] the post-verdict motions was a reasonable response to Appellant’s 'flouting’ of the authority of the court.” Id., at 233-234, 639 A. 2d, at 3. Under Pennsylvania’s fugitive forfeiture law, the court concluded, Kindler’s case therefore came to it “without any allegations of error (direct or collateral) preserved.” Id., at 234, 639 A. 2d, at 4.
The Pennsylvania Supreme Court nonetheless conducted the “limited review” mandated for death sentences under Pennsylvania law. Under that review, the court was required to confirm that the evidence was sufficient to support the conviction of first-degree murder and at least one aggravating factor, and that the sentence was not excessive, disproportionate, or the product of passion or prejudice. Id., at 234-235, 639 A. 2d, at 4. Satisfied that Kindler’s conviction met these standards, the court affirmed his conviction and sentence. We denied certiorari. Kindler v. Pennsylvania, 513 U. S. 933 (1994).
On state habeas, the Court of Common Pleas rejected Kindler’s claims. That court held that the Pennsylvania Supreme Court had already ruled that Kindler’s escape forfeited all claims challenging his conviction and sentence that *59 Kindler may once have been entitled to bring. Commonwealth v. Kindler, No. 2747 etc. (July 23, 1997), App. 183, 187-188. The Pennsylvania Supreme Court affirmed. Kindler, 554 Pa., at 514, 722 A. 2d, at 143.
Kindler then sought federal habeas relief. The District Court determined that the fugitive forfeiture rule did not provide an adequate basis to bar federal review of Kindler’s habeas claims. 291 F. Supp. 2d, at 340-343. The District Court then proceeded to address the merits, granting Kindler’s petition on the grounds that he was sentenced based on jury instructions that were unconstitutional under Mills v. Maryland, 486 U. S. 367 (1988), and that the prosecutor improperly introduced an aggravating factor at sentencing. 291 F. Supp. 2d, at 346-351, 357-358. The court rejected Kindler’s ineffective assistance of counsel claim. Id., at 356.
The Third Circuit affirmed. That court began by recognizing that “[a] procedural rule that is consistently applied in the vast majority of cases is adequate to bar federal habeas review even if state courts are willing to occasionally overlook it and review the merits of a claim for relief where the rule would otherwise apply.” Kindler v. Horn, 542 F. 3d 70, 79 (2008). The Court of Appeals then considered the Pennsylvania fugitive forfeiture rule in place at the time of Kindler’s first escape: “Pennsylvania courts had discretion to hear an appeal filed by a fugitive who had been returned to custody before an appeal was initiated or dismissed. . . . Accordingly, the fugitive forfeiture rule was not 'firmly established’ and therefore was not an independent and adequate procedural rule sufficient to bar review of the merits of a habeas petitio[n] in federal court.” Ibid, (citing Doctor v. Walters, 96 F. 3d 675, 684-686 (CA3 1996)). The court thus determined that “the state trial court still had discretion to reinstate his post-verdict motions. Accordingly, we conclude that, under Doctor, Pennsylvania’s fugitive waiver law did not preclude the district court from reviewing the merits of the claims raised in Kindler’s habeas petition.” *60 542 F. 3d, at 80. Turning to the merits, the Court of Appeals disagreed with the District Court on the improper aggravating factor claim, but held that Kindler was entitled to relief based on his Mills and ineffective assistance of counsel claims. 542 F. 3d, at 80-87.
The Commonwealth petitioned for certiorari, arguing that the Court of Appeals’ determination that state discretionary rules are automatically inadequate conflicted, with the holdings of other Courts of Appeals and warranted this Court’s review. Pet. for Cert. 6-11. Kindler countered that the Commonwealth had miseharacterized the Third Circuit’s holding. Relying on the court’s citation of the Doctor opinion, Kindler argued that the Third Circuit did not hold that discretionary state rules are automatically inadequate; rather the court determined that the state courts applied “a new and different rule from that in existence at the time of the alleged default.” Brief in Opposition 3. It was that new rule, Kindler maintained, that the Third Circuit found inadequate. Ibid.
We granted the Commonwealth’s petition for certiorari. 556 U. S. 1234 (2009). That petition asks us to decide whether discretionary procedural rulings are automatically inadequate to bar federal court review on habeas.
II
The question whether a state procedural ruling is adequate is itself a question of federal law. Lee v. Kemna, 534 U. S. 362, 375 (2002). We have framed the adequacy inquiry by asking whether the state rule in question was “ ‘firmly established and regularly followed.’” Id., at 376 (quoting James v. Kentucky, 466 U. S. 341, 348 (1984)).
We hold that a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review. Nothing inherent in such a rule renders it inadequate for purposes of the adequate state ground doctrine. To the contrary, a discretionary rule can be “firmly established” *61 and “regularly followed” — even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others. See Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L. Rev. 1128, 1140 (1986) (“[R]efusals to exercise discretion do not form an important independent category under the inadequate state ground doctrine”).
A contrary holding would pose an unnecessary dilemma for the States: States could preserve flexibility by granting courts discretion to excuse procedural errors, but only at the cost of undermining the finality of state court judgments. Or States could preserve the finality of their judgments by withholding such discretion, but only at the cost of precluding any flexibility in applying the rules.
We are told that, if forced to choose, many States would opt for mandatory rules to avoid the high costs that come with plenary federal review. See, e. g., Brief for State of California et al. as Amici Curiae 19; Brief for Criminal Justice Legal Foundation as Amicus Curiae 14. That would be unfortunate in many cases, as discretionary rules are often desirable. In some circumstances, for example, the factors facing trial courts “are so numerous, variable and subtle that the fashioning of rigid rules would be more likely to impair [the trial judge’s] ability to deal fairly with a particular problem than to lead to a just result.” United States v. McCoy, 517 F. 2d 41, 44 (CA7) (Stevens, J.), cert. denied, 423 U. S. 895 (1975); see also Friendly, Indiscretion About Discretion, 31 Emory L. J. 747, 760-761 (1982). The result would be particularly unfortunate for criminal defendants, who would lose the opportunity to argue that a procedural default should be excused through the exercise of judicial discretion. See Henry v. Mississippi, 379 U. S. 443, 463, n. 3 (1965) (Harlan, J., dissenting) (“If, in order to insulate its decisions from reversal by this Court, a state court must strip itself of the discretionary power to differentiate between different sets *62 of circumstances, the [adequate state ground] rule operates in a most perverse way”).
It is perhaps unsurprising, then, that the federal system often grants broad discretion to the trial judge when his ringside perspective at the “‘main event’” offers him a comparative advantage in decisionmaking. Wainwright v. Sykes, 433 U. S. 72, 90 (1977); cf. United States v. Poynter, 495 F. 3d 349, 351-352 (CA6 2007). The States seem to value discretionary rules as much as the Federal Government does. See Brief for State of California et al. as Amici Curiae 16-17 (citing various state discretionary procedural rules). In light of the federalism and comity concerns that motivate the adequate state ground doctrine in the habeas context, see Coleman, 501 U. S., at 730, it would seem particularly strange to disregard state procedural rules that are substantially similar to those to which we give full force in our own courts. Cf. Francis v. Henderson, 425 U. S. 536, 541-542 (1976). Even stranger to do so with respect to rules in place in nearly every State, and all at one fell swoop.
We take our holding in this case to be uncontroversial — so uncontroversial, in fact, that both parties agreed to the point before this Court. See Tr. of Oral Arg. 29-31. Rather than defending the question on which we granted certiorari— whether discretionary rules are automatically inadequate— Kindler argues that the Pennsylvania courts did not apply a discretionary rule at all, but instead applied a new rule mandating dismissal. Such a mandatory dismissal, Kindler contends, constituted a break from past discretionary practice, and thus does not provide an adequate state ground to bar his federal claims. We leave it to the Court of Appeals to address that argument, and any others Kindler may have preserved, on remand.
For its part, the Commonwealth urges us not only to reject a per se rule about discretionary rulings, but also to undertake “[a] new effort to state a standard for inadequacy.” Brief for Petitioners 25. Amici supporting the Common *63 wealth join in that request. See Brief for Criminal Justice Legal Foundation as Amicus Curiae 6-10. We decline that invitation as well. The procedural default at issue here— escape from prison — is hardly a typical procedural default, making this case an unsuitable vehicle for providing broad guidance on the adequate state ground doctrine.
If our holding in this case is narrow, it is because the question we granted certiorari to decide is narrow. Answering that question is sufficient unto the day.
The judgment of the Court of Appeals for the Third Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

Justice Alito took no part in the consideration or decision of this case.