FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DONNA KAY LEE,
        *Petitioner-Appellant*,

v.

DEBRA JACQUEZ,
        *Respondent-Appellee.*

No. 12-56258

D.C. No.
2:01-cv-10751-PA-PLA

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
November 17, 2014—Pasadena, California

Filed June 9, 2015

Before: Mary M. Schroeder, Harry Pregerson,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[*]

### Habeas Corpus

The panel reversed the district court's denial of California state prisoner Donna Kay Lee's habeas corpus petition challenging her first-degree murder convictions and remanding for the district court to consider Lee's claims on the merits.

The district court found that *Ex parte Dixon*, 264 P.2d 513 (Cal. 1953), which prohibits California state courts from considering habeas claims that should have been raised on direct appeal but were omitted, is an adequate and independent state law procedural rule that bars federal review of Lee's claims.

Assuming without deciding that *Dixon* is an independent state law rule, the panel held that the state has failed to meet its burden of demonstrating the *Dixon* bar's adequacy at the time of Lee's procedural default. The panel wrote that where the state endorsed a statistical analysis to demonstrate a rule's adequacy, and the panel is left only with evidence that the *Dixon* bar was applied to between seven and twenty-one percent of all habeas cases filed in the months surrounding Lee's default, the state failed to meet its burden of proving that the *Dixon* bar was adequate.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Marta VanLandingham (argued), Deputy Federal Public Defender; and Sean Kennedy, Federal Public Defender, Los Angeles, California, for Petitioner-Appellant.

Robert M. Snider (argued), Deputy Attorney General; Dane R. Gillette, Chief Assistant Attorney General; Lance E. Winters, Senior Assistant Attorney General; Kenneth C. Byrne, Supervising Deputy Attorney General; and Kamala D. Harris, Attorney General of California, Los Angeles, California, for Respondent-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

Donna Kay Lee is serving two life sentences without the possibility of parole in a California state prison for first degree murder. After the California Court of Appeal affirmed her conviction on direct appeal, Lee filed various habeas petitions in state courts. All of her claims were denied, some on the merits and others as procedurally barred. This appeal concerns eleven claims that the California Supreme Court found to be procedurally barred under the *Dixon* rule, which prohibits California state courts from considering habeas claims that should have been raised on direct appeal but were omitted. *Ex parte Dixon*, 264 P.2d 513 (Cal. 1953). On federal habeas review, the district court found that *Dixon* is an adequate and independent state law procedural rule that bars federal review of Lee's claims. However, even assuming, without deciding, that *Dixon* is an independent state law rule, the state has failed to meet its burden of

demonstrating the *Dixon* bar's adequacy at the time of Lee's procedural default. Thus, we reverse and remand for the district court to consider her claims on the merits.

## BACKGROUND

On March 23, 1998, Lee was convicted of two counts of first degree murder in Los Angeles County Superior Court. She was sentenced to two life sentences without the possibility of parole, plus an additional two years for the use of a knife. Lee appealed her conviction on June 10, 1999, raising four claims.[1] Her appeal was denied on the merits on August 28, 2000. The California Supreme Court affirmed on December 13, 2000.

Proceeding *pro se*, Lee filed a habeas petition in federal court, raising fourteen claims. After the government moved to dismiss the petition as largely unexhausted, Lee moved to withdraw her petition without prejudice to allow her to exhaust her claims in state court. The district court held her motion in abeyance, and ordered Lee to either submit a First Amended Petition, limited to her exhausted claims, or move for voluntary dismissal to pursue her claims in state court. In response, Lee submitted a First Amended Petition, and also moved to stay the proceedings while she exhausted her other claims in state court. The district court granted a stay, and Lee returned to state court to seek habeas relief, raising eleven claims.

---

[1] Though her original appeal lists five claims, *see People v. Lee*, No. B126544, slip op. at 14 (Cal. Ct. App. Aug. 28, 2000), her first and second claims were later consolidated on habeas review.

After Lee's habeas petitions in both the California Superior Court and the Court of Appeal were denied,[2] she filed a habeas petition with the California Supreme Court, raising eleven claims from her original federal petition and a new claim regarding an alleged improper exclusion of female jurors. The Court denied her petition with citations to *In re Waltreus*, 397 P.2d 1001 (Cal. 1965), *In re Seaton*, 95 P.3d 896 (Cal. 2004), and *Dixon*.

Lee then returned to federal court to proceed with her federal habeas petition. In a Second Amended Petition, she included the four claims she had initially raised on direct appeal to the California courts, seven newly-exhausted claims, and four supplemental claims (which corresponded to the first four claims raised in her state habeas petition). The district court dismissed her petition, rejecting four claims on the merits and finding the rest to be procedurally defaulted under *Dixon*. On appeal, we affirmed the dismissal of two of Lee's claims on the merits[3] and reversed as to the procedural default issue, finding that the district court had "erroneously concluded that the Ninth Circuit had found the *Dixon* rule to be an independent and adequate state law ground." *Lee v.*

_____

[2] Because all California courts have original jurisdiction in habeas corpus proceedings, Cal. Const. Art. VI, § 10, "no appeal lies from the denial of a petition for writ of habeas corpus." *In re Clark*, 855 P.2d 729, 767 n.7 (Cal. 1993). Thus, a petitioner may seek relief by filing new petitions in each court, though subsequent claims are limited to those raised in the first petition. *See In re Martinez*, 209 P.3d 908, 915 (Cal. 2009).

[3] We affirmed the denial of Lee's claims regarding severance and battered women's syndrome, both of which were raised on direct appeal. *Lee v. Jacquez*, 406 F. App'x 148, 149 (9th Cir. 2010). Lee did not appeal the district court's denial on the merits of her two remaining claims, and thus we did not consider them. *See id.*

*Jacquez*, 406 F. App'x 148, 150 (9th Cir. 2010). We remanded to give the state an opportunity to present evidence of the *Dixon* rule's independence and adequacy. *Id.* On remand, the district court again concluded that the *Dixon* bar was an independent and adequate state law rule at the time of Lee's procedural default. This timely appeal followed.

## DISCUSSION

Lee argues that the state failed to meet its burden of proving that *Dixon* is an independent and adequate state law ground barring federal review of her habeas claims. We have jurisdiction to review her claim under 28 U.S.C. §§ 1291 and 2253, and we review the district court's denial of her habeas petition *de novo*. *Ybarra v. McDaniel*, 656 F.3d 984, 989 (9th Cir. 2011).

We now hold that the state failed to meet its burden of proving the *Dixon* bar's adequacy at the time of Lee's procedural default. Because a state procedural rule must be both independent *and* adequate to prevent federal habeas review, we need not decide whether *Dixon* is an independent state law ground.

## The Adequacy Requirement

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (alteration in original) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). This rule arises from the need to "show proper respect for state courts and avoid rendering advisory opinions." *Id.* at 63 (Kennedy,

J., concurring). Conversely, an inadequate state law ground will not bar federal review of a claim's merits. "We have not allowed state courts to bar review of federal claims by invoking new procedural rules without adequate notice to litigants who . . . have in good faith complied with existing state procedural law." *Id.* at 63–64.

Here, the California Supreme Court declined to review the merits of Lee's claims by invoking *Dixon*'s procedural bar, which prevents state courts from considering habeas claims that should have been raised on direct appeal but were not. *Dixon*, 264 P.2d at 514. The parties do not contest that the *Dixon* rule, if independent and adequate, would bar all of Lee's remaining habeas claims except two (Ground 6 and Supplemental Ground 4), because Lee failed to first raise these claims on direct appeal of her conviction.[4]

Adequacy is evaluated at the time of the petitioner's purported default, which for *Dixon* is the date when the petitioner could have raised the claims on direct appeal. *Fields v. Calderon*, 125 F.3d 757, 760–61 (9th Cir. 1997). In order to be adequate, a procedural bar must be "clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Collier v. Bayer*, 408 F.3d

---

[4] A federal court may review the merits of a claim that was procedurally defaulted on an independent and adequate state procedural ground if the petitioner "can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Noltie v. Peterson*, 9 F.3d 802, 804–05 (9th Cir. 1993). Here, Lee has not asserted good cause for her default, nor has she claimed that a fundamental miscarriage of justice would occur absent consideration of her claim. *See Lee v. Mitchell*, No. 01-10751-PA, slip op. at 20 (C.D. Cal. June 19, 2007). Thus, we do not reach these issues.

1279, 1284 (9th Cir. 2005) (quoting *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996)).  The Supreme Court has described this requirement as asking whether a state procedural rule was "firmly established and regularly followed" at the time of the petitioner's default.  *Walker v. Martin*, 131 S. Ct. 1120, 1127–28 (2011) (quoting *Kindler*, 558 U.S. at 60–61).  The adequacy requirement exists to prevent state courts from discriminating against "disfavored claims," and to "ensure that habeas petitioners have fair notice of what they must do to avoid default."  *Kindler v. Horn*, 642 F.3d 398, 401 (3d Cir. 2011).

We have established a burden-shifting regime to guide our evaluation of a state procedural bar's adequacy.  *See Bennett v. Mueller*, 322 F.3d 573 (9th Cir. 2003).  First, the state must plead the existence of an independent and adequate state procedural bar as an affirmative defense.  *Id.* at 586.  Next, the burden shifts to the petitioner, who must "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule."  *Id.*  The petitioner's burden at this stage is "modest," *Dennis v. Brown*, 361 F. Supp. 2d 1124, 1130 (N.D. Cal. 2005), and the use of unpublished decisions to show the state's "actual practice" is encouraged, *Powell v. Lambert*, 357 F.3d 871, 879 (9th Cir. 2004).  If the petitioner successfully puts adequacy at issue, then the burden shifts back to the state, which must carry "the ultimate burden of proving the adequacy of [a] . . . state [procedural] bar" as an affirmative defense.  *Bennett*, 322 F.3d at 585–86.

Applying *Bennett*'s burden-shifting framework to this case, we conclude that the state has satisfied its initial burden

by adequately pleading the independence and adequacy of *Dixon* as an affirmative defense.  At the second step, our previous remand in this case suggests that Lee has met her burden of putting the adequacy of the *Dixon* rule at issue.  *See Lee*, 406 F. App'x at 150 (noting that Lee "presented evidence challenging the independence and adequacy of" the *Dixon* rule and remanding to the district court for an evaluation of the state's "evidence to the contrary").  Thus, we are left at the final stage of *Bennett*'s framework, where the state must prove the *Dixon* bar's adequacy.

## A. *Walker v. Martin* and Discretionary State Procedural Bars

The state argues that the Supreme Court's decision in *Walker v. Martin*, 131 S. Ct. 1120 (2011), means that the *Dixon* bar may be adequate even if the rule was applied inconsistently during the time period surrounding Lee's default.  This argument misreads *Martin*'s holding and scope.

In *Walker v. Martin*, the Supreme Court found California's timeliness procedural bar to be an independent and adequate state procedural ground that bars later federal habeas review of a claim on the merits.  *Id.* at 1131. "California does not employ fixed statutory deadlines to determine the timeliness of a state prisoner's petition for habeas corpus.  Instead, California directs petitioners to file known claims 'as promptly as the circumstances allow.'" *Id.* at 1124 (quoting *In re Clark*, 855 P.2d 729, 738 n. 5 (Cal. 1993)).  This rule has also been described as setting a general "reasonableness" standard, where a habeas petition is deemed timely if it was filed within a reasonable period of time.  *See Carey v. Saffold*, 536 U.S. 214, 221 (2002). California courts will generally deny untimely petitions by citing to the

California Supreme Court decisions of *In re Clark*, 855 P.2d 729 (Cal. 1993) and *In re Robbins*, 959 P.2d 311 (Cal. 1998). *Martin*, 131 S. Ct. at 1124.

"[O]utcomes under [this] rule vary from case to case," *id.* at 1129, as courts must evaluate the reasonableness of a filing based on the particular circumstances of each petition. Nevertheless, relying on its previous opinion in *Beard v. Kindler*, which first held that "a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review," 558 U.S. at 60, the *Martin* Court found California's discretionary timeliness rule to be both firmly established and regularly followed. 131 S. Ct. at 1128–29. The rule had developed through case law, putting habeas petitioners on notice that they must "alleg[e] with specificity" why their petition was not substantially delayed or explain their eligibility for an exception to the time bar. *Id.* at 1128 (alteration in original) (quoting *In re Gallego*, 959 P.2d 290, 299 (Cal. 1998)). Thus, even though the rule's language is "indeterminate" and does not set strict filing deadlines, its "[a]pplication . . . in particular circumstances . . . supplie[s] the requisite clarity" for the purposes of establishing adequacy. *Id.* The *Martin* Court noted that the California courts "regularly follow[]" and "regularly invoke" the timeliness rule, and did so around the time the petitioner had filed for habeas relief. *Id.* at 1229.

Relying on *Martin*, the state argues that, like California's timeliness rule, *Dixon* is a discretionary procedural bar, and any inconsistency in *Dixon*'s application reflects only the state's exercise of discretion rather than the rule's inadequacy. We find this argument unpersuasive. California's timeliness rule is inherently discretionary in its initial application, while the *Dixon* rule is mandatory in the

first instance. Evaluating whether a habeas petition has been "filed as promptly as the circumstances allow" requires a case-specific evaluation in every instance, leading inevitably to varied outcomes. *Id.* at 1125 (quoting *Clark*, 855 P.2d at 738 n.5). The *Dixon* bar, in contrast, is meant to apply to all habeas claims that could have been raised on direct appeal but were not. *Robbins*, 959 P.3d at 340 n.34 (noting that California courts apply the *Dixon* bar "whenever . . . applicable"). Deciding whether a claim is barred by *Dixon* involves not a malleable, circumstance-specific question of "reasonableness," but a straightforward review of the record: A claim is either record-based, or it is not, and the petitioner either raised or omitted a claim on direct appeal. Thus, California state courts should be able to apply the *Dixon* bar mechanically and consistently, and a failure to cite *Dixon* where *Dixon* applies does not reflect the exercise of discretion so much as it reflects the irregular application of the rule.

The state attempts to get around *Dixon*'s mandatory applicability by focusing on the rule's four *Harris* exceptions. *See In re Harris*, 855 P.2d 391, 395 n.3, 398–407 (Cal. 1993) (detailing the four exceptions to the *Dixon* rule); *see also Robbins*, 959 P.2d at 340 n. 34 (clarifying that the court considers the *Harris* exceptions when imposing the *Dixon* bar). These exceptions allow courts to excuse a *Dixon* procedural default if a "fundamental constitutional error" occurred, if the original court lacked or acted in excess of its jurisdiction, or if there has been "a change in the law affecting the petitioner." *Harris*, 855 P.2d at 398–407. Since courts may decline to apply the *Dixon* bar when an exception excuses a petitioner's failure to raise a claim on appeal, the state argues that *Dixon* and the timeliness rule are similarly discretionary.

While the state's argument has some superficial appeal, we do not believe that *Dixon*'s exceptions transform a mandatory rule into a discretionary one. First, like the *Dixon* rule, the timeliness bar also has four exceptions. *Clark*, 855 P.2d at 797–98. Yet *Martin* mentioned these exceptions only in passing. *See* 131 S. Ct. at 1128. Instead, the Court focused its analysis on the discretion inherent in the timeliness bar's initial application, rather than on the application of the bar's exceptions. *See id.* at 1125 (noting that its holding means to ensure that California could maintain the "flexibility of current practice"), 1130 (noting that discretion allows courts to "avoid . . . harsh results," and emphasizing the importance of encouraging states to choose more malleable rules).

Thus, even if courts must exercise discretion when applying *Dixon*'s exceptions, this analysis occurs only after *Dixon* has first been applied. *See, e.g.*, *In re Preston*, 98 Cal. Rptr. 3d 340, 344 (Cal. Ct. App. 2009) (noting the applicability of the *Dixon* bar, and then applying one of *Dixon*'s four exceptions to consider the claim on the merits); *In re Crockett*, 71 Cal. Rptr. 3d 632, 637 (Cal. Ct. App. 2008) (same). And the state court will likely invoke an exception to the *Dixon* bar whenever it applies, instead of simply not applying *Dixon* without explanation. *Cf. Robbins*, 959 P.3d at 340 n.34 ("When, in our orders, we impose the [*Dixon*] bar[] . . . this signifies that we have concluded that none of the four [*Harris*] exceptions . . . apply.").

Second, the *Martin* opinion carefully focused its holding on discretionary rules, expressly noting that it "leaves unaltered [the Supreme] Court's repeated recognition that federal courts must carefully examine state procedural requirements to ensure that they do not operate to

discriminate against claims of federal rights." 131 S. Ct. at 1130. In short, *Martin* does not support the state's argument that the inconsistent application of a state procedural rule merely reflects the state's exercise of discretion.[5] To the contrary, while *Martin* noted that "[a] *discretionary* rule ought not be disregarded automatically upon a showing of seeming inconsistencies," *id.* (emphasis added), the Court also stated that "a state [procedural] rule must be 'firmly established and regularly followed'" to be deemed adequate, *id.* at 1127–28 (quoting *Kindler*, 558 U.S. at 60).

We conclude that in order to bar federal review of Lee's habeas claims, the state must prove the *Dixon* rule's regular and consistent application around the time of Lee's default. We now turn to the state's attempt to do so.

## B.  The State's Burden

The parties dispute what precisely the state must show in order to meet its burden at the final stage of *Bennett*'s test. As noted, adequacy requires that a rule be "clear, consistently applied, and well-established," *Collier*, 408 F.3d at 1284 (quoting *Bean*, 96 F.3d at 1129), and "firmly established and regularly followed," *Martin*, 131 S. Ct. at 1127–28 (quoting *Kindler*, 558 U.S. at 60–61). Yet we lack "binding case law defining what is a statistically insignificant irregularity and

---

[5] Our conclusion is buttressed by the fact that other circuits have continued to ask whether state procedural rules are regularly followed and consistently applied after the *Martin* decision. *See, e.g.*, *Lee v. Corsini*, 777 F.3d 46, 54 (1st Cir. 2015) (citing the "regularly followed" standard for adequacy); *Lark v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 596, 613 (3d Cir. 2011) (distinguishing a "facially mandatory state procedural rule which was not clearly followed" from the discretionary rules evaluated in *Walker* and *Kindler*).

inconsistency in the application of a state procedural bar." *Monarrez v. Alameda*, No. 03-00104, 2005 WL 2333462 (C.D. Cal. Sept. 22, 2005), at *6. Some cases have suggested that a rule must be applied in the "vast majority" of cases in order to be considered adequate. *Scott v. Schriro*, 567 F.3d 573, 580 (9th Cir. 2009) (quoting *Dugger v. Adams*, 489 U.S. 401, 411 n.6 (1989)); *see also Moran v. McDaniel*, 80 F.3d 1261, 1270 (9th Cir. 1996). A closer look at these cases, however, suggests that the court was describing a sufficient but unnecessary condition—while a rule applied in the "vast majority" of cases is most likely adequate, such a showing is not required for a rule to be found adequate. *See Dugger*, 489 U.S. at 410 n. 6 (noting that "[i]n the vast majority of cases . . . the Florida Supreme Court has faithfully applied" the rule at issue, without seeming to set out an absolute standard); *Scott*, 567 F.3d at 580 (internal quotation marks and citation omitted) (stating that a procedural bar "is considered consistently applied and well-established if the state courts follow it in the vast majority of cases"). Thus, while a state's reliance on a procedural ground in the vast majority of cases would likely prove the rule's adequacy, the state need not necessarily reach such a high statistical bar in order to prove its affirmative defense.

*Bennett* does provide some specific guidance regarding the state's ultimate burden, noting that "[t]he scope of the state's burden of proof . . . will be measured by the specific claims of inadequacy put forth by the petitioner.'" 322 F.3d at 584–85 (quoting *Hooks v. Ward*, 184 F.3d 1206, 1217 (10th Cir. 1999)). *Bennett* also advises the state to provide "records and authorities [that] prove whether its courts have regularly and consistently applied the procedural bar," 322 F.3d at 585, which suggests that the state should do more than just discredit the petitioner's evidence from *Bennett*'s

second step. *See also Monarrez*, No. 03-00104, at *6 (finding that the state failed to meet its ultimate burden under *Bennett* when it merely contested petitioner's evidence of inadequacy without providing its own affirmative evidence).

Additionally, we know that the *Dixon* bar was applied inconsistently until at least September 30, 1993, when the California Supreme Court decided *Harris* to "provide needed guidance" for application of the rule going forward. 855 P.2d at 395 n.3, 398; *see also Fields*, 125 F.3d at 763 (noting that *Dixon* "had been obscured" by inconsistent application over the years); *La Crosse v. Kernan*, 244 F.3d 702, 705 (9th Cir. 2001) (reading *Fields* to hold *Dixon* as per se inadequate until at least 1993). Almost five years later, the California Supreme Court noted in *Robbins* that it needed to again "provide guidance" on the *Dixon* rule, suggesting that the rule's application did not become consistent in the time period immediately following *Harris*. 959 P.2d at 340 n.34; *see also Park v. California*, 202 F.3d 1146, 1152 n.4 (9th Cir. 2000) (reading *Robbins* as an attempt "to establish the adequacy . . . of . . . future *Dixon*" decisions).

After *Robbins* was decided, however, *Dixon*'s adequacy remains unclear. Though *Harris* and *Robbins* meant to create consistent application of the rule going forward, "it does not follow that the rule in historical fact has been so applied." *Bennett*, 322 F.3d at 583. In fact, while no Ninth Circuit case has found *Dixon* to be inadequate in the post-*Harris* era, *Cree v. Sisto*, No. 2:08-CV-00487, 2011 WL 66253, (E.D. Cal. Jan. 7, 2011), at *2, in no case has the state met its burden of proving *Dixon*'s adequacy at *Bennett'*s third step. *See, e.g.*, *Dennis v. Brown*, 361 F. Supp. 2d 1124, 1133 (N.D. Cal. 2005) (concluding that the state failed to meet its burden because it cited no cases or opinions showing actual practice);

*Ayala v. Ayers*, No. 01-CV-0741, 2008 WL 1787317 (S.D. Cal. Apr. 16, 2008) (same); *Vaughn v. Adams*, No. CVF-015241, 2006 WL 1439400 (E.D. Cal. May 22, 2006), *adopted in full by Vaughn v. Adams*, No. 1:01-CV-05241, 2006 WL 1774915 (E.D. Cal. June 24, 2006) (finding that the state failed to meet its burden because it did not overcome the specific evidence submitted by the petitioner showing *Dixon*'s inadequacy). In every case where the state has been permitted to use the *Dixon* bar as an affirmative defense, the petitioner failed to place the adequacy of the bar at issue as required by *Bennett*'s second step. *See, e.g.*, *Cree v. Sisto*, No. 2:08-00487, 2011 WL 66253 (E.D. Cal. Jan. 7, 2011); *Johnson v. Giurbino*, No. 1:03-CV-06013, 2007 WL 2481789 (E.D. Cal. Aug. 29, 2007); *Sanchez v. Ryan*, 392 F. Supp. 2d 1136, 1138–39 (C.D. Cal. 2005); *Flores v. Roe*, No. 05-5296, 2005 WL 1406086 (E.D. Cal. June 14, 2005), *aff'd by Flores v. Roe*, 228 F. App'x 690 (9th Cir. 2007); *Protsman v. Pliler*, 318 F. Supp. 2d 1004, 1014 (S. D. Cal. 2004).

While these lower court evaluations of *Dixon*'s adequacy are not binding, these decisions inform our analysis because "[a] procedural rule is either adequate or inadequate during a given time period." *King v. LaMarque*, 464 F.3d 963, 968 (9th Cir. 2006). Thus, the fact that the state has never shown *Dixon*'s adequate application at *Bennett*'s third step is not insignificant as we evaluate its efforts to meet its burden in this case.

## C. The State's Evidence

With this backdrop in mind, we turn to the state's evidence. The state analyzed 4,700 California Supreme Court habeas denials surrounding the time of Lee's June 10, 1999 default, finding that the *Dixon* procedural bar was invoked in

approximately twelve percent of all habeas denials. Though the application rate varied between seven and twenty-one percent across the months surveyed (August 1998 to June 2000), the state argues that this shows a "predictable" application of *Dixon* such that the rule was an adequate state law ground at the time of Lee's default.

We find this evidence entirely insufficient to meet the state's burden of showing the *Dixon* rule's adequacy. The state's evidence merely shows *Dixon*'s application as a percentage of *all* habeas denials filed during this time period, and does not purport to show to how many cases the *Dixon* bar *should* have been applied. Logic dictates that in order to know if invoking *Dixon* in twelve percent of all cases shows consistent application, we need to know "the number of times that claims to which the *Dixon* rule could apply were instead rejected on the merits." *Lee v. Mitchell*, No. CV-01-10751-PA, 2012 WL 2194471, at *18 (C.D. Cal. May 1, 2012). Thus, we are missing the denominator that would give any meaning to the state's number. Without a baseline number against which to measure the twelve percent application rate, this percentage in no way indicates the consistency of the rule's application.

The state attempts to cover the gap in its evidence in two ways. First, the state argues that many of the habeas denials from the surveyed time period were actually silently applying procedural bars that were first invoked by a lower state court. This may be so. If the California Supreme Court denies a habeas petition without explanation, the federal courts will presume that a procedural default was imposed if "the last reasoned opinion on the claim explicitly impose[d] a procedural default." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). But this argument does not relieve the state of its

burden of proving adequacy, and the state does not identify cases in which a silent denial relied on a prior invocation of *Dixon*. As the Supreme Court has noted, "[t]he essence of unexplained orders is that they say nothing." *Id.* at 804. Thus, unless the state points out an underlying *Dixon* default behind an ambiguous denial, we cannot assume that a silent adoption of *Dixon* occurred.

Second, the state challenges the evidence submitted by Lee at *Bennett'*s second step, which shows that the California Supreme Court failed to invoke *Dixon* in at least nine cases to which it should have been applied among its December 21, 1999 habeas denials. Upon close review of these cases, and mindful of the fact that we previously found that Lee met her burden of putting the *Dixon* rule's adequacy in question, *see Lee*, 406 F. App'x at 150, we reject the state's challenge. While five of the cited cases raised ineffective assistance of counsel claims, which often involve extra-record issues that would not be barred by *Dixon*, these cases also had other record-based claims to which *Dixon* should have applied. Since California courts regularly employ multiple procedural bars to deny petitions with multiple claims (as Lee's own case reflects), these five cases provide some evidence of inconsistent application of *Dixon*. Further, the state argues that several cases are distinguishable because they involved petitioners who had pled guilty, which restricted their rights on direct appeal. *See* Cal. Penal Code § 1237.5. But the state fails to explain how these restricted rights affect habeas petitions and *Dixon*'s applicability—and the state's claim is also belied by the existence of several habeas cases where *Dixon* barred the claims of petitioners who had pled guilty. *See, e.g.*, *Reyes v. Cash*, No. CV-13-1248, 2014 WL 3734550, at *1 (C.D. Cal. July 28, 2014) (noting that a petitioner who had pled guilty had his state habeas petition

denied on procedural grounds, including by *Dixon*); *Gustafson v. Long*, No. CV-13-1737, 2014 WL 4187828, at *12 (C.D. Cal. Apr. 16, 2014) (same).

In sum, we are left only with evidence that the *Dixon* bar was applied to between seven and twenty-one percent of all habeas cases filed in the months surrounding Lee's default. Because this statistic, without more, is incomplete, the state failed to meet its burden of proving that the *Dixon* bar was "clear, consistently applied, and well-established at the time of [Lee's] purported default." *Collier*, 408 F.3d at 1284.[6]

## CONCLUSION

We do not suggest that the state must always use a statistical analysis to prove a rule's adequacy, and nor do we set any precise statistical bar that must be reached if the state does use such an approach. Here, however, the state chose to use just such a statistical framework, and argues that, if the *Dixon* bar is mandatory, statistical analysis would be the best way to demonstrate the rule's regular and consistent application. Endorsing this method, and then providing only a partial statistical picture, the state must now live with the inevitable result: *Dixon*'s application to twelve percent of all habeas denials tells us almost nothing about the rule's consistent application and, therefore, its adequacy. While the state requested at oral argument that we remand to allow it to compile the missing records, which the state conceded were

---

[6] Lee also argues that two of her claims, Ground 6 and Supplemental Ground 4, were sufficiently raised in her direct appeal such that they are not barred by *Dixon*. We need not address this argument because we find the *Dixon* bar to be an inadequate state law ground. All of her remaining claims should be considered on the merits on remand.

likely available, we see no reason to give the state yet another chance. The state had a full opportunity to prove *Dixon*'s adequacy and failed to do so. Thus, we remand for the district court to consider Lee's claims on the merits.

**REVERSED AND VACATED**.