# SUPREME COURT OF THE UNITED STATES

DEBORAH K. JOHNSON, WARDEN *v.* DONNA
KAY LEE

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 15–789.   Decided May 31, 2016

PER CURIAM.

Federal habeas courts generally refuse to hear claims
"defaulted . . . in state court pursuant to an independent
and adequate state procedural rule." *Coleman* v. *Thompson*, 501 U. S. 722, 750 (1991).  State rules count as "adequate" if they are "firmly established and regularly followed." *Walker* v. *Martin*, 562 U. S. 307, 316 (2011)
(internal quotation marks omitted).  Like all States, California requires criminal defendants to raise available
claims on direct appeal.  Under the so-called "*Dixon* bar," a
defendant procedurally defaults a claim raised for the first
time on state collateral review if he could have raised it
earlier on direct appeal.  See *In re Dixon*, 41 Cal. 2d 756,
759, 264 P. 2d 513, 514 (1953).  Yet, in this case, the Ninth
Circuit held that the *Dixon* bar is inadequate to bar federal habeas review.  Because California's procedural bar is
longstanding, oft-cited, and shared by habeas courts
across the Nation, this Court now summarily reverses the
Ninth Circuit's judgment.

I

Respondent Donna Kay Lee and her boyfriend Paul
Carasi stabbed to death Carasi's mother and his ex-girlfriend.  A California jury convicted the pair of two
counts each of first-degree murder.  Carasi received a
death sentence, and Lee received a sentence of life without
the possibility of parole.  In June 1999, Lee unsuccessfully
raised four claims on direct appeal.  After the California

appellate courts affirmed, Lee skipped state postconviction review and filed the federal habeas petition at issue. See 28 U. S. C. §2254(a). The petition raised mostly new claims that Lee failed to raise on direct appeal. Because Lee had not exhausted available state-court remedies, however, the District Court temporarily stayed federal proceedings to allow Lee to pursue her new claims in a state habeas petition. The California Supreme Court denied Lee's petition in a summary order citing *Dixon*.

Having exhausted state remedies, Lee returned to federal court to litigate her federal habeas petition. The District Court dismissed her new claims as procedurally defaulted. Then, for the first time on appeal, Lee challenged the *Dixon* bar's adequacy. In her brief, Lee presented a small sample of the California Supreme Court's state habeas denials on a single day about six months after her default. Lee claimed that out of the 210 summary denials on December 21, 1999, the court failed to cite *Dixon* in 9 cases where it should have been applied. The court instead denied the nine petitions without any citation at all. In Lee's view, these missing citations proved that the California courts inconsistently applied the *Dixon* bar. Without evaluating this evidence, the Ninth Circuit reversed and remanded "to permit the Warden to submit evidence to the contrary, and for consideration by the district court in the first instance." *Lee* v. *Jacquez*, 406 Fed. Appx. 148, 150 (2010).

On remand, the warden submitted a study analyzing more than 4,700 summary habeas denials during a nearly 2-year period around the time of Lee's procedural default. From August 1998 to June 2000, the study showed, the California Supreme Court cited *Dixon* in approximately 12% of all denials—more than 500 times. In light of this evidence, the District Court held that the *Dixon* bar is adequate.

The Ninth Circuit again reversed. *Lee* v. *Jacquez*, 788

F. 3d 1124 (2015). Lee's 1-day sample proved the *Dixon* bar's inadequacy, the court held, because the "failure to cite *Dixon* where *Dixon* applies . . . reflects [its] irregular application." 788 F. 3d, at 1130. The general 12% citation rate proved nothing, the court reasoned, because the warden "d[id] not purport to show to how many cases the *Dixon* bar *should* have been applied." *Id.,* at 1133. In the Ninth Circuit's view, without this "baseline number" the warden's 2-year study was "entirely insufficient" to prove *Dixon*'s adequacy. 788 F. 3d, at 1133.

## II

The Ninth Circuit's decision profoundly misapprehends what makes a state procedural bar "adequate." That question is a matter of federal law. *Lee* v. *Kemna*, 534 U. S. 362, 375 (2002). "To qualify as an 'adequate' procedural ground," capable of barring federal habeas review, "a state rule must be 'firmly established and regularly followed.'" *Martin*, *supra*, at 316 (quoting *Beard* v. *Kindler*, 558 U. S. 53, 60 (2009)).

California's *Dixon* bar satisfies both adequacy criteria. It is "firmly established" because, decades before Lee's June 1999 procedural default, the California Supreme Court warned defendants in plain terms that, absent "special circumstances," habeas "will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." *Dixon*, *supra*, at 759, 264 P. 2d, at 514. And the California Supreme Court eliminated any arguable ambiguity surrounding this bar by reaffirming *Dixon* in two cases decided before Lee's default. See *In re Harris*, 5 Cal. 4th 813, 825, n. 3, 829–841, 855 P. 2d 391, 395, n. 3, 398–407 (1993); *In re Robbins*, 18 Cal. 4th 770, 814–815, and n. 34, 959 P. 2d 311, 340–341, and n. 34 (1998).

The California Supreme Court's repeated *Dixon* citations also prove that the bar is "regularly followed." *Mar-*

*tin* recently held that another California procedural bar—a rule requiring prisoners to file state habeas petitions promptly—met that requirement because "[e]ach year, the California Supreme Court summarily denies hundreds of habeas petitions by citing" the timeliness rule. 562 U. S., at 318. The same goes for *Dixon*. Nine purportedly missing *Dixon* citations from Lee's 1-day sample of summary orders hardly support an inference of inconsistency. See *Dugger* v. *Adams*, 489 U. S. 401, 410, n. 6 (1989) (holding that the Florida Supreme Court applied its similar procedural bar "consistently and regularly" despite "address[ing] the merits in several cases raising [new] claims on postconviction review"). Indeed, all nine orders in that sample were denials. None ignored the *Dixon* bar to *grant* relief, so there is no sign of inconsistency.

Nor is California's rule unique. Federal and state habeas courts across the country follow the same rule as *Dixon*. "The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review." *Sanchez-Llamas* v. *Oregon*, 548 U. S. 331, 350–351 (2006). Likewise, state postconviction remedies generally "may not be used to litigate claims which were or could have been raised at trial or on direct appeal." 1 D. Wilkes, State Postconviction Remedies and Relief Handbook §1:2, p. 3 (2015–2016 ed.). It appears that every State shares this procedural bar in some form. See Brief for State of Alabama et al. as *Amici Curiae* 1, n. 2 (collecting citations). For such well-established and ubiquitous rules, it takes more than a few outliers to show inadequacy. Federal habeas courts must not lightly "disregard state procedural rules that are substantially similar to those to which we give full force in our own courts." *Kindler*, 558 U. S., at 62. And it would be "[e]ven stranger to do so with respect to rules in place in nearly every State." *Ibid.* Nothing suggests, moreover, that California courts apply the *Dixon*

bar in a way that disfavors federal claims. The Court therefore holds that it qualifies as adequate to bar federal habeas review.

## III

The Ninth Circuit's contrary reasoning is unpersuasive and inconsistent with this Court's precedents. Applying the *Dixon* bar may be a "straightforward" or "mechanica[l]" task for state courts. 788 F. 3d, at 1130. But simplicity does not imply that missing citations reflect state-court inconsistency. To begin with, since the *Dixon* bar has several exceptions, see *Robbins*, *supra*, at 814–815, and n. 34, 959 P. 2d, at 340–341, and n. 34, the California Supreme Court can hardly be faulted for failing to cite *Dixon* whenever a petitioner raises a claim that he could have raised on direct appeal.

More importantly, California courts need not address procedural default before reaching the merits, so the purportedly missing citations show nothing. Cf. *Bell* v. *Cone*, 543 U. S. 447, 451, n. 3 (2005) (*per curiam*) (declining to address the warden's procedural-default argument); *Lambrix* v. *Singletary*, 520 U. S. 518, 525 (1997) (explaining that "[j]udicial economy might counsel" bypassing a procedural-default question if the merits "were easily resolvable against the habeas petitioner"). Ordinarily, "procedural default . . . is not a jurisdictional matter." *Trest* v. *Cain*, 522 U. S. 87, 89 (1997). As a result, the appropriate order of analysis for each case remains within the state courts' discretion. Such discretion will often lead to "seeming inconsistencies." *Martin*, 562 U. S., at 320, and n. 7. But that superficial tension does not make a procedural bar inadequate. "[A] state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." *Id.*, at 311; see *Kindler*, *supra*, at 60–61.

The Ninth Circuit's attempt to get around *Martin* and *Kindler* fails. The Court of Appeals distinguished those cases on the ground that California's *Dixon* bar is "mandatory" rather than discretionary because it involves a discretion-free general rule, notwithstanding exceptions that might involve discretion. 788 F. 3d, at 1130. The Court assumes, without deciding, that this description is accurate and the *Dixon* bar's exceptions leave some room for discretion. Even so, there is little difference between discretion exercised through an otherwise adequate procedural bar's exceptions and discretion that is a part of the bar itself. In any event, the Ninth Circuit's reasoning ignores the state courts' discretion to assume, without deciding, that a claim is not procedurally defaulted and instead hold that the claim lacks merit.

The Ninth Circuit was accordingly wrong to dismiss the 500-plus summary denials citing *Dixon* simply because they do not reveal which cases potentially implicate the bar. 788 F. 3d, at 1133. *Martin* already rejected this precise reasoning. There, the habeas petitioner unsuccessfully argued that "[u]se of summary denials makes it impossible to tell why the California Supreme Court decides some delayed petitions on the merits and rejects others as untimely." 562 U. S., at 319 (internal quotation marks omitted). So too here, "[w]e see no reason to reject California's [procedural] bar simply because a court may opt to bypass the [*Dixon*] assessment and summarily dismiss a petition on the merits, if that is the easier path." *Ibid.*

By treating every missing citation as a sign of inconsistency, the Court of Appeals "pose[d] an unnecessary dilemma" for California. *Kindler*, 558 U. S., at 61. The court forced the State to choose between the "finality of [its] judgments" and a burdensome opinion-writing requirement. *Ibid.*; see *Martin*, *supra*, at 312–313 (noting that the California Supreme Court "rules on a staggering

number of habeas petitions each year"); *Harrington* v. *Richter*, 562 U. S. 86, 99 (2011) (discussing the advantages of summary dispositions). "[F]ederal courts have no authority," however, "to impose mandatory opinion-writing standards on state courts" as the price of federal respect for their procedural rules. *Johnson* v. *Williams*, 568 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 9). The Ninth Circuit's decision is thus fundamentally at odds with the "federalism and comity concerns that motivate the adequate state ground doctrine in the habeas context." *Kindler*, *supra*, at 62.

\*     \*     \*

"A State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system." *Lambrix*, *supra*, at 525. Here, the Ninth Circuit permitted California prisoners to evade a well-established procedural bar that is adequate to bar federal habeas review. The petition for a writ of certiorari and respondent's motion to proceed *in forma pauperis* are granted. The judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*