**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RONNELD JOHNSON,
*Petitioner-Appellant*,

v.

W. L. MONTGOMERY, Acting
Warden,
*Respondent-Appellee.*

No. 15-56007

D.C. No.
2:14-cv-04766-
AB-VBK

OPINION

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted February 13, 2018
Pasadena, California

Filed August 15, 2018

Before: Marsha S. Berzon and Jay S. Bybee, Circuit
Judges, and John A. Woodcock, Jr.,[*] District Judge.

Opinion by Judge Woodcock;
Partial Concurrence and Partial Dissent by Judge Berzon

---

[*] The Honorable John A. Woodcock, Jr., United States District Judge
for the District of Maine, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of California state prisoner Ronneld Johnson's habeas corpus petition challenging enhancements applied at sentencing for his conviction for two counts of robbery.

Johnson argued that the evidence supporting an enhancement for a gang-related crime was constitutionally insufficient under *Jackson v. Virginia*, 443 U.S. 307 (1979). The panel held that it was objectively unreasonable for the California Court of Appeal to conclude that the evidence was sufficient for a reasonable jury to find the robbery was committed "in association with" a gang, but that any error regarding gang "association" was harmless because the California Court of Appeal's alternative conclusion—that the evidence was sufficient for a reasonable jury to find the robbery was committed "for the benefit of" a gang—was not objectively unreasonable.

Johnson also argued that an enhancement for a prior nonjury juvenile adjudication violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The panel held that even assuming that the California Supreme Court should have decided that Johnson's *Apprendi* claims fell within an exception to the *In re Dixon* procedural bar, Johnson would not have been entitled to a reduced sentence because the California Supreme Court would have applied *People v.*

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

*Nguyen*, 209 P.3d 946 (Cal. 2009) (interpreting *Apprendi*'s exception for prior convictions to cover nonjury juvenile adjudications), and reasonably upheld the sentencing enhancement based on Johnson's juvenile conviction.

Concurring in part and dissenting in part, Judge Berzon agreed with the majority as to Johnson's *Apprendi* claim, but did not agree that a rational jury could have found that Johnson committed robbery for the benefit of a gang totally distinct from his own.

## COUNSEL

Michael T. Drake (argued), Research and Writing Attorney; Hilary L. Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Petitioner-Appellant.

Charles Shang-Rei Lee (argued) and Kathy S. Pomerantz, Deputy Attorneys General; Kenneth C. Byrne, Supervising Deputy Attorney General; Lance E. Winters, Senior Assistant Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Los Angeles, California; for Respondent-Appellee.

**OPINION**

WOODCOCK, District Judge:

Ronneld Johnson, a California state prisoner, appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his sentencing enhancement for a prior nonjury juvenile conviction and his sentencing enhancement for a gang-related crime. Johnson argues that the evidence supporting the gang enhancement was constitutionally insufficient under *Jackson v. Virginia*, 443 U.S. 307 (1979), and he argues that the enhancement for his nonjury juvenile conviction violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Because the evidence was sufficient to establish that the robbery was "for the benefit of" a gang, and because the juvenile conviction claim was procedurally barred and sentencing enhancements based on nonjury juvenile convictions do not violate any clearly established federal law as determined by the United States Supreme Court, we affirm.

I

*Background*

A. The Robbery

At roughly 9:00 AM on November 9, 2011, Ronneld Johnson and Jonathan King twice drove by a house in the area of 111th and Anzac or Grape Streets in Southeast Los Angeles. Two men were doing landscaping work at the house. Johnson and King then pulled into an alley next to the house, exited the car, and approached the other men. Johnson pointed a semiautomatic gun at the faces of the victims, first

at one, and then he hopped a small fence to point the gun at the other. Johnson and King took their money, a cell phone, and a gold chain. During the robbery, either Johnson or King said, "Hurry up cuz," which was either directed at the other defendant or at one of the victims. Johnson and King then got back in the car and left.

In December 2011, the State charged both Johnson and King with two counts of robbery each, including gang and gun enhancement allegations. In March 2012, a jury convicted Johnson and King and found the gang and gun enhancements to be true.

## B.  *The Gang Evidence*

The prosecution called an expert witness, Officer Jose Carias, to testify about the nature of criminal street gangs. For example, Officer Carias explained that gang members sometimes commit crimes so that other members will "respect" them, and he testified that gangs often encourage or require their members to "put in work"—meaning commit crimes—in order to ensure the gang is respected and feared by others in the community, elevating the status of the gang and discouraging witnesses from reporting information to the police. He said that "cuz" is a term typically used by Crip gangs, and is not a term typically used by members of other gangs, like Bloods or Hispanic gangs. He also testified that it is not uncommon for members of different gangs to commit crimes together after forming ties through family, school, or juvenile detention.

King was an admitted member of a gang, the Project Watts Crips. He had numerous tattoos indicating membership in that gang, including some on his face and

hands. Johnson had self-identified as a member of the 58th Street Neighborhood Crips in 2006, but the tattoos on his body, including his hands, suggest he was a member of a different gang, the East Coast Crips. Robbery is one of the primary activities of the Project Watts Crips. The robbery occurred within the area the Project Watts Crips claims as its territory. The territory of the East Coast Crips is roughly four or five miles away.

After a lengthy hypothetical scenario corresponding to the facts of Johnson and King's case, the gang expert opined that the individuals "committed a crime together in concert and thus in association with another gang member," and he concluded that the crime primarily benefited the Project Watts Crips. The expert relied on the following factors: that both perpetrators were members of gangs, they committed the crime within Project Watts Crips territory, they used the word "cuz," they drove by the victims multiple times indicating a level of sophistication, they seemed comfortable because they took the time to jump a fence and rob a second person, and the crime occurred in broad daylight, without any attempt to hide their identities.

## C. *The Post-Trial Proceedings*

On April 4, 2012, the trial court sentenced Johnson to an aggregate term of imprisonment of twenty-eight years, eight months. The sentence was based on the robbery, the gang and gun enhancements, and a prior strike from a juvenile conviction, all to run consecutively. The sentencing court also found Johnson in violation of probation in another case, and sentenced him to an additional consecutive 16-month term of imprisonment.

On October 4, 2012, Johnson filed a direct appeal. The California Court of Appeal denied his appeal on May 15, 2013. Johnson sought review from the California Supreme Court, but it denied review without substantive comment on July 24, 2013.

On January 6, 2014, Johnson filed a state habeas petition. The California Court of Appeal denied the petition on January 23, 2014. On February 18, 2014, Johnson filed a habeas petition in the California Supreme Court. It denied Johnson's petition on May 14, 2014.

On June 20, 2014, Johnson filed a petition for a writ of habeas corpus in the United States District Court for the Central District of California. The district court denied Johnson's habeas petition on June 8, 2015.

II

*The Sufficiency of the Evidence for the Gang Enhancement*

A. *The Standard of Review*

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum" or "increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury" and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490; *Alleyne v. United States*, 570 U.S. 99, 103 (2013). Under *Jackson*, a due process claim challenging the sufficiency of the evidence "can only succeed when, viewing all the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Emery v.*

*Clark*, 643 F.3d 1210, 1213 (9th Cir. 2011). "When assessing a petition for a writ of habeas corpus, we thus 'look to [state] law only to establish the elements of [the crime] and then turn to the federal question of whether the [state] court was objectively unreasonable in concluding that sufficient evidence supported [its decision].'" *Boyer v. Belleque*, 659 F.3d 957, 965 (9th Cir. 2011) (alterations in original) (quoting *Juan H. v. Allen*, 408 F.3d 1262, 1278 n.14 (9th Cir. 2005)). In addition to *Jackson*'s already deferential standard, a second level of deference applies under AEDPA. For the petitioner to prevail, we must conclude that the state court's determination that a rational jury could have found each required element proven beyond a reasonable doubt was not just wrong but was objectively unreasonable. *Boyer*, 659 F.3d at 964–65.

## B. The California Gang Enhancement

California's gang enhancement applies to "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Cal. Penal Code § 186.22(b)(1). The first prong requires that the crime be related to a gang, and the second prong that the defendant specifically intend to assist a gang member's crime. *See People v. Albillar*, 244 P.3d 1062, 1070 (Cal. 2010). Johnson does not challenge the sufficiency of the evidence regarding the specific intent prong. Rather, he challenges the California appellate court's conclusions that there was sufficient evidence that the robbery he committed with King was "in association with" and "for the benefit of" a gang. "Because the first prong is worded in the disjunctive, [the] gang enhancement may be imposed" based on either gang

association or benefit. *People v. Weddington*, 200 Cal. Rptr. 3d 799, 813 (Cal. Ct. App. 2016).

   1. *It was objectively unreasonable to conclude that the evidence was sufficient for a reasonable jury to find the robbery was committed "in association with" a gang.*

"Committing a crime in concert with known gang members can be substantial evidence that the crime was committed in 'association' with a gang." *People v. Garcia*, 199 Cal. Rptr. 3d 399, 413 (Cal. Ct. App. 2016). A crime is committed "in association with" the gang if the "defendants relied on their common gang membership and the apparatus of the gang" when they committed the crime. *Id.* at 414 (quoting *Albillar*, 244 P.3d at 1071). In *Albillar*, the California Supreme Court focused on the act of "committing a crime with fellow gang members. . . ." 244 P.3d at 1072. *Albillar* teaches that it is not sufficient to simply commit any act in concert with a gang member, rather it is acting in concert with individuals of "common gang membership" that satisfies the "in association with" element of the gang enhancement. *Id.*

The California Court of Appeal concluded that the evidence was sufficient to support the gang enhancement based on the "in association with" component because Johnson and King were both gang members, coupled with "the manner in which the robberies were committed, which indicated appellants acted in concert." The court also pointed to the expert's testimony that "gang members' personal ties spill over into street crime." The court's conclusions were unreasonable because Johnson and King did not act "in concert" with "fellow" or "common" gang members.

Johnson and King were members of different gangs, with different enrollment and territories.

It is also not enough to say that Johnson and King were both Crips. Under California law, the prosecution cannot group distinct gangs or sets within a larger criminal outfit unless there is "some associational or organizational connection uniting those subsets." *People v. Prunty*, 355 P.3d 480, 486 (Cal. 2015); *see also People v. Franklin*, 203 Cal. Rptr. 3d 876, 886 (Cal. Ct. App. 2016) (labeling the State's attempt to group distinct gangs together a "bait-and-switch" and concluding there was insufficient evidence of "association" when the Defendant, a member of the Jim Town gang, committed a crime "with the assistance of three friends who were members of *other* gangs, not the Jim Town gang.").

Nevertheless, any error regarding gang "association" was harmless because the California Court of Appeal's alternate conclusion—that there was sufficient evidence the robbery was committed "for the benefit of" a gang—was not objectively unreasonable. *See infra.*

 2. *It was not objectively unreasonable to conclude that the evidence was sufficient for a reasonable jury to find the robbery was committed "for the benefit of" a gang.*

Under California law, "[e]xpert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a [ ] criminal street gang' within the meaning of section 186.22(b)(1)." *Albillar*, 244 P.3d at 1073. "[T]he typical close case is one in

which one gang member, acting alone, commits a crime." *People v. Leon*, 73 Cal. Rptr. 3d 786, 796 (Cal. Ct. App. 2008) (quoting *People v. Morales*, 5 Cal. Rptr. 3d 615, 632 (Cal. Ct. App. 2003)).

As in many cases, the gang expert here testified that violent crimes benefit a gang by increasing the intimidation in the community, lowering reporting rates among witnesses, and allowing the criminal enterprise to continue free from police restraint. The gang expert also opined that such crimes bestow "respect" on the individual and elevate the status of the gang. Even so, the testimony of a gang expert, without more, "is insufficient to find an offense gang related." *People v. Ochoa*, 102 Cal. Rptr. 3d 108, 114 (Cal. Ct. App. 2009). "[T]he record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the *crime* was committed for the benefit of . . . a criminal street gang." *Id.* (quoting *People v. Martinez*, 10 Cal. Rptr. 3d 751, 757 (Cal. Ct. App. 2004)).

Here, there was sufficient evidence to establish the following facts supporting the gang enhancement and the expert's testimony: (1) the robbery was a violent crime, committed with a gun pointed directly into the face of a victim, (2) the robbery occurred within the territory of the Project Watts Crips, (3) robbery is one of the primary activities of the Project Watts Crips, (4) the robbery occurred in broad daylight, (5) the robbery was brazen because it involved multiple victims and occurred at a time of the day, roughly 9:00 a.m., when neighbors were most likely to observe the crime; (6) King had numerous tattoos, including some visible on his face and hands, indicating membership in the Project Watts Crips, (7) during the robbery, either

Johnson or King used the term "cuz," a term used by members of Crips gangs, and (8) the victims were ordinary members of the public with no personal relationship with the defendants or gangs.

Even though Johnson and King never explicitly mentioned King's gang or flashed gang signs, it was not objectively unreasonable to conclude that a rational jury could find this cumulative evidence sufficient to show the robbery was committed "for the benefit of" King's gang. The outward manifestations of gang involvement—King's visible tattoos, the use of gang-affiliated lingo, the brazen daylight timing, and the apparent comfort with being observed—were sufficient for a jury to infer that the crime was meant to send a message to the public about gang brutality and control. Those outward signs also pointed to the Project Watts Crips specifically—King's visible tattoos indicated membership in that gang, the lingo was associated with Crips gangs, the crime occurred in that gang's territory, and robberies are one of that gang's primary criminal activities.

A California appellate court considered Johnson's arguments that the robbery was not "for the benefit of" King's gang and concluded the underlying facts were sufficient to support the expert testimony and establish gang benefit under California law. Johnson does not dispute whether the evidence was sufficient under *Jackson* to establish the key facts, rather, he questions whether those uncontested facts are legally sufficient to satisfy the requirements of this California law. That is a question about what state law requires, on which the state court has spoken. *Estelle v. McGuire*, 502 U.S. 62, 63 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."). The state court decision was not objectively unreasonable.[1]

## III

### *The Prior Nonjury Juvenile Adjudication*

*Apprendi* held that any fact used to increase the maximum penalty for a crime, "[o]ther than the fact of a prior

---

[1] We note that this decision was not incompatible with other California caselaw. Habeas relief may lie when a misapplication of state law is weighty enough to rise to the level of a due process violation. *See Estelle*, 502 U.S. at 71–73. When we "look to [state] law . . . to establish the elements of [the crime]," *Boyer*, 659 F.3d at 965, that includes prior state cases because, were a state court to misapply the elements or reinterpret the elements in a wildly inconsistent manner, recasting sufficiency of the evidence questions as matters of state law interpretation, it would doubtless transgress *Jackson* and due process. But this was far from such a case.

The state court's decision was not objectively unreasonable because even if it involved a slightly novel application of the gang enhancement elements, that interpretation was in harmony with prior California precedent, not so discordant as to undermine the fundamental federal right to proof of every element beyond a reasonable doubt. Nothing in the prior caselaw prohibited application of the enhancement when the defendant was not a member of the gang that the crime was committed to benefit. *See Garcia*, 199 Cal. Rptr. 3d at 414–16; *Morales*, 5 Cal. Rptr. 3d at 632. Those California cases reversing the enhancement are distinguishable. *See e.g.*, *People v. Rios*, 165 Cal. Rptr. 3d 687, 712–14 (Cal. Ct. App. 2013) (nonviolent possession crime); *Ochoa*, 102 Cal. Rptr. 3d at 111, 117–18 (at night, outside gang territory, no observable signs of gang affiliation); *People v. Ramirez*, 198 Cal. Rptr. 3d 318, 322–23 (Cal. Ct. App. 2016) (personal dispute between neighbors); *Franklin*, 203 Cal. Rptr. 3d at 880–82 (prior romantic relationship with victim); *People v. Perez*, 226 Cal. Rptr. 3d 820, 826–27 (Cal. Ct. App. 2017) (outside gang territory, no observable signs of gang affiliation).

conviction," must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 490. The California Supreme Court interprets *Apprendi*'s exception for prior convictions to cover nonjury juvenile adjudications. *People v. Nguyen*, 209 P.3d 946, 953 (Cal. 2009). This court reached the opposite conclusion. *United States v. Tighe*, 266 F.3d 1187, 1194 (9th Cir. 2001). But our interpretation of *Apprendi* "does not represent clearly established federal law 'as determined by the Supreme Court of the United States,'" as required to overturn a state court decision regarding a federal claim under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Boyd v. Newland*, 467 F.3d 1139, 1152 (9th Cir. 2006) (quoting 28 U.S.C. § 2254(d)(1)).

The California Supreme Court denied Johnson's *Apprendi* claim in his habeas petition as procedurally barred, citing *In re Dixon*, 264 P.2d 513, 514 (Cal. 1953). In California, "[t]he general rule is that . . . the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." *Id.* The United States Supreme Court held that California's *Dixon* rule is an adequate state ground to bar federal habeas review of a petitioner's claim. *Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016) (per curiam).

Johnson contends that the California Supreme Court misapplied its own procedural rule because his *Apprendi* claim falls within a recognized exception to *Dixon*.[2] Although we examine the application of state rules that bar review of federal claims, *Cone v. Bell*, 556 U.S. 449, 468–69 (2009), "it is unusual to reject a state court's use of a

---

[2] Johnson does not attempt to demonstrate cause and prejudice for the procedural default.

procedural bar on the ground that it was erroneously applied." *Sivak v. Hardison*, 658 F.3d 898, 907 (9th Cir. 2011); *accord Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir. 2007). Even assuming that the California Supreme Court should have decided that the *Apprendi* claim fell within an exception to the *Dixon* bar, Johnson would not have been entitled to a reduced sentence because the California Supreme Court would have applied *Nguyen* and reasonably upheld the sentencing enhancement based on Johnson's juvenile conviction.

IV

*Conclusion*

For the reasons set forth above, the district court is **AFFIRMED.**

---

BERZON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority as to Ronneld Johnson's claim under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). But I do not agree that a rational jury could have found that Johnson committed robbery for the benefit of a gang totally distinct from his own.

California law on sentencing enhancements for gang activity is broad, but—as California courts have explained—it is not boundless. Here, taking into account the "double dose of deference" we owe to a state court's resolution of a sufficiency of the evidence claim, *Long v. Johnson*, 736 F.3d

891, 896 (9th Cir. 2013), there was simply no evidence that Johnson committed robbery either "in association with" or "for the benefit of" his co-defendant's gang. Cal. Pen. Code § 186.22(b)(1). I would thus grant Johnson's habeas claim under *Jackson v. Virginia*, 443 U.S. 307 (1979). Because the majority does not, I dissent.

## I.

I begin with some common ground. The California Court of Appeal held that, in light of Johnson's and his codefendant King's "known gang affiliation," the fact that they "acted in concert," and evidence that "gang members' personal ties spill over into street crime, . . . [were] sufficient to establish that each defendant committed the robberies in association with a gang member." In so doing, the Court misunderstood a basic premise of the California gang enhancement statute, as the majority opinion holds. Maj. Opn. at 9–10.

"Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (internal quotation marks omitted). Here, the "association with" prong of the relevant California gang enhancement statute is met when defendants "c[o]me together *as gang members*" to commit a crime, thus relying on "their common gang membership." *People v. Albillar*, 51 Cal. 4th 47, 62 (2010).

There was no "common gang membership" in this case: Johnson was a member of the East Coast Crips, while King was a member of the Project Watts Crips. There was no evidence that the defendants' gangs had any overlap in members or activities. Instead, the gang expert testified that: the Project Watts Crips' "primary rivals" included three other

Crips gangs; he disagreed with the proposition that "all Crip gangs or sets get along with other Crip sets"; and he agreed that, "even though they've adopted the same color, if you will, or the same title, Crips, it's been [his] experience that, even within that larger group, there's going to be some rivalry and infighting."

Because the defendants were in different gangs, and there was no evidence that the different gangs associated with one another, no rational jury could have found that King and Johnson acted in association with a single gang.

## II.

The Court of Appeal held, in the alternative, that there was sufficient evidence under *Jackson* that Johnson committed the robberies "for the benefit of" King's gang. Cal. Pen. Code § 186.22(b)(1). Unlike the majority, I would hold this conclusion as well objectively unreasonable.

Under California law, a crime can benefit a gang if it "enhanc[es]" the gang's "reputation for viciousness." *Albillar*, 51 Cal. 4th at 63. But, here, even the evidence that King committed the robberies to benefit his own gang's reputation was flimsy. The gang expert opined that the robberies benefitted the Project Watts Crips in two ways: by "creat[ing] a sense of fear and intimidation with the community," thereby "prevent[ing] citizens from coming forward and reporting crimes like this"; and by "bestow[ing] a certain amount of respect on" and "elevat[ing] the status of the gang itself." The expert rested his conclusion exclusively on evidence that King was a member of the Project Watts Crips, and that robberies were committed with "comfort" in the territory of the Project Watts Crips "in broad daylight,"

while one of the defendants used the word "cuz," a word the expert represented as particular to "Crip gang members."

There is an obvious gap between the expert's opinion and the evidence introduced to support it: "[T]here was no evidence that . . . any of the . . . persons who witnessed the crime knew that [Project Watts Crips] gang members or affiliates were involved. Therefore, the crime could not have enhanced respect for the gang members or intimidated others in their community . . . ." *In re Daniel C.*, 195 Cal. App. 4th 1350, 1363 (2011). King or Johnson used a word generically associated with *all* Crips gang subsets, including the Project Watts Crips' rivals. While King had Project Watts Crips-related tattoos, neither victim saw them. Even if the victims *had* seen King's tattoos, there was no evidence that they would have been able to associate them with the Project Watts Crips gang. The tattoos do not obviously mean anything to a layperson—they contain the words "Funny" and "Side," the letters "P," "J," and "RIP," and abstract symbols.[1] And the fact that the robbery was committed in Project Watts Crips territory cannot, on its own, support a link between the robbery and the gang's reputation. *See People v. Ramon*, 175 Cal. App. 4th 843, 851–52 (2009). On that logic, *any* robbery committed in the territory, even if it is unconnected to a gang or connected to a rival Crips gang, enhances the Project Watts Crips' reputation.

---

[1] Such tattoo evidence is fundamentally unlike that in the most relevant California case, in which the "for the benefit" prong was met despite "no one call[ing] out the gang's name"; in that case, "the assailants' identity as Carpas gang members was obvious," because the "[a]ppellant had the word 'Carpas' tattooed across his upper lip." *People v. Galvez*, 195 Cal. App. 4th 1253, 1261 (2011).

The majority places great weight on the "outward manifestations of gang involvement" displayed by both King and Johnson. Maj. Opn. at 12. This reasoning ignores the fact that such signs did not, and could not, point to affiliation with the Project Watts Crips in particular, and thus could not benefit *that* gang by enhancing its reputation. To the extent Johnson displayed signs of gang membership generally, neither California law, nor due process, permits Johnson to be subject to a sentence enhancement for benefitting *a particular gang* by enhancing its reputation because he looked like and sounded like someone who was in *any gang*. A general aura of "gangness"—even if broken down in a numbered list—cannot establish a particular benefit to a particular gang.

The Court of Appeal, and today's opinion, sidestep the fundamental question of how, exactly, the Project Watts Crips' reputation in particular could have been affected by the crime when there was no evidence indicating that onlookers could connect the Project Watts Crips to it. The majority appears persuaded by the Court of Appeal's concern that if it held "self-identification during the commission of a crime [to be] an essential requirement," "such a requirement would allow gang members to get around the gang enhancement."

To the degree this concern constitutes a factual finding, it is flatly unreasonable. Defendants need not self-identify as gang members to commit a crime for the benefit of a gang; they could commit a crime to fund a gang, or to further its other illegal activities, while maintaining steadfast secrecy. *See, e.g.*, *People v. Gonzales*, 232 Cal. App. 4th 1449, 1466–67 (2015). But if the prosecutor's theory is that the defendants intended to benefit a gang by enhancing its reputation for violence, surely there must be *some way* for the violent crime's victims or onlookers to connect the particular

defendant's actions to that gang, either through self-identification or some other means. If the onlookers cannot make that connection, and there is no non-reputational benefit to the gang, due process, as well as California law, require that defendants not receive a gang enhancement.

## III.

Even if the evidence barely supported King's sentence enhancement, there was just no evidence introduced as to why Johnson, a member of one gang, would seek to promote the reputation of a different gang.

The gang expert suggested that it was "not uncommon" for members of different gangs to commit crimes together because they "form[] ties" at school, through family, or at juvenile hall. In other words, he opined that members of different gangs commit crimes together because they know each other. That is not an opinion or evidence that they commit crimes together because they seek to benefit one another's gangs.

The majority's result implies that Johnson's motives are of no moment—that the government need not prove that Johnson committed his crime for the benefit of King's gang so long as King did so. *See* Maj. Opn. at 12. That is incorrect. The statute "does not punish a defendant for the actions of associates." *People v. Gardeley*, 14 Cal. 4th 605, 624 n.10 (1996), *abrogated on other grounds by People v. Sanchez*, 63 Cal. 4th 665 (2016). "[R]ather[,] the act increases the punishment for a defendant who committed a felony to aid or abet criminal conduct of a group that has as a primary function the commission of specified criminal acts. . . ." *Id.* California courts have not hesitated to overturn

such gang enhancements under *Jackson* when evidence of such aims—*i.e.*, evidence of a motivating beneficial relationship between the defendant's criminal acts and the identified gang—is lacking. *See People v. Perez*, 18 Cal. App. 5th 598, 606–14 (2017) (collecting cases); *People v. Ramirez*, 244 Cal. App. 4th 800, 818–19 (2016); *Ramon*, 175 Cal. App. 4th at 851 (2009).

*No published case* has upheld a gang enhancement for a member of one gang because his actions were taken "for the benefit of" a gang unrelated to his own. Instead, for example, *People v. Garcia* upheld a gang enhancement as to a member of one Hispanic gang who committed a crime with two members of another Hispanic gang, who "apparently relied upon and trusted him as if he were one of them"; there, unlike in Johnson's case, "[a]n expert witnesses . . . testified that there was a great deal of crossover between Hispanic criminal street gangs" in the relevant area. *Garcia*, 244 Cal. App. 4th 1349, 1369 (2016). There was no similar testimony here. The gang expert stressed that King's and Johnson's gangs were distinct. And, as noted, to the limited extent he explained why the two would commit a crime together, his explanation relied entirely on the basis of ordinary social acquaintance, not gang membership.

## IV.

This Court has an "obligation under *Jackson* to identify those rare occasions in which a properly instructed jury may convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) (alterations and internal quotation marks omitted). That obligation exists even under the deferential standards of the Anti-Terrorism and Effective

Death Penalty Act, 28 U.S.C. § 2554(d)(1).    And that obligation requires granting Johnson's habeas petition.

In short, there was *no* evidence indicating that Johnson's crime would enhance someone else's gang's reputation for violence, and there was *no* evidence suggesting that Johnson committed the robberies "for the benefit" of a gang to which he did not belong.  I respectfully dissent.