**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 17 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DWIGHT EVANS, | No. 19-56054 |
| Petitioner-Appellant, | D.C. No. 2:18-cv-05980-R-SHK |
| v. | |
| RAYMOND MADDEN, Warden, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Submitted November 13, 2020**
Pasadena, California

Before: CHRISTEN and WATFORD, Circuit Judges, and ROSENTHAL,***
District Judge.

Even on a cold appellate record and viewed through the doubly deferential

standard of federal habeas review, this case has some drama. Dwight Evans and

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

Antonio Barnes had known each other for years and belonged to the same gang, the Bounty Hunter Bloods. Evans was married to Tanasha Parker. Barnes was in a romantic relationship with Parker.

On an election day in March 2013, Evans and Parker went to a polling place where Parker was working. Evans signed in using the name "David," not "Dwight." Barnes came to the polling place and asked to speak with Parker. Evans asked Barnes "what's up, player, player," then asked Barnes to "step outside." Evans led the way to the door and checked to make sure Barnes followed him out of the building. Seconds later, three shots rang out. Barnes stumbled back through the door with gunshot wounds.

A janitor at the polling place was the first person to help Barnes. Barnes told the janitor that the "old girl's man" shot him and that he should not have been "messing around" with her. Police found a sweatshirt with the nametag "David" less than a block from the polling place.

Barnes survived. A jury convicted Evans of attempted premeditated murder and of being a felon in possession of a firearm. He was sentenced to 50 years to life.

Evans argues that the trial court erred by failing to include the attempted manslaughter instruction in the written jury instructions, although the court included it in the oral instructions. Evans also argues that there was insufficient evidence to support his convictions. The California Court of Appeal upheld his convictions and

2

sentence, and the California Supreme Court denied discretionary review. Evans filed a petition for writ of habeas corpus with the federal district court, which denied it. We have jurisdiction under 28 U.S.C. § 2254, and we affirm.

## I.      The Standards of Review

We review de novo a district court's denial of a petition for a writ of habeas corpus. *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018). In assessing a state court conviction, we review the "last reasoned state court decision," which, in this case, was the California Court of Appeal's decision to uphold Evans's conviction. *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). We may affirm on any ground the record supports. *Ybarra v. McDaniel*, 656 F.3d 984, 989 (9th Cir. 2011).

Under the Antiterrorism and Effective Death Penalty Act of 1996, we may not grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

## II.      The Jury Instructions

Evans first argues that the trial court violated his due-process rights by failing to provide written instructions on the lesser-included offense of attempted

3

manslaughter. The trial court's oral instructions included that "[a]n attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter if the defendant attempted to kill someone because of a sudden quarrel or in the heat of passion." Besides orally instructing the jury on the elements of attempted voluntary manslaughter, the trial court provided the jury with a verdict form for attempted voluntary manslaughter. In closing, attorneys for both sides argued the attempted voluntary manslaughter issue. The defense asked the jury to find Evans guilty only of attempted voluntary manslaughter. The prosecutor argued that the lesser offense did not apply because the shooting was "ambush" style and not in the heat of passion.

The failure to provide written jury instructions on attempted voluntary manslaughter in these circumstances was error, but the state court's finding that the error did not violate Evans's due-process rights was not unreasonable. *See United States v. Jones*, 353 F.3d 816, 819 (9th Cir. 2003) ("While providing the jury with written instructions has become increasingly common in the past decades, it is not automatically required."). The California Court of Appeals neither violated nor unreasonably applied clearly established federal law in denying relief on this claim.

## III. The Sufficiency of the Evidence

Under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the

4

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lucero v. Holland*, 902 F.3d 979, 990 (9th Cir. 2018) (quoting *Jackson*, 443 U.S. at 319 (emphasis in original)). The question is whether the jury's finding was "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam). We grant a writ of habeas corpus based on the insufficiency of the evidence only if we "conclude that the state court's determination that a rational jury could have found each required element proven beyond a reasonable doubt was not just wrong but was objectively unreasonable." *Johnson v. Montgomery*, 899 F.3d 1052, 1056–57 (9th Cir. 2018). When making this determination, we look to state law "only to establish the elements" of the crime, and then "turn to the federal question of whether the [state] court was objectively unreasonable in concluding that sufficient evidence supported" its decision. *Boyer*, 659 F.3d at 965 (quoting *Juan H. v. Allen*, 408 F.3d 1262, 1266 n.14 (9th Cir. 2005)).

Evans argues that much of the witness testimony was contradictory and that no physical evidence linked him to the shooting. The evidence showed that Barnes identified Evans as the shooter within minutes after the shooting. At trial, Barnes recanted his prior identification and said that he did not see Evans on the day of the shooting. Instead, Barnes testified that he and Evans "get along." To rebut Barnes's testimony, a police detective testified that gang members regularly do not cooperate

5

with law enforcement or testify against fellow gang members. Barnes and Evans were fellow gang members.

Evans also points out that the janitor who helped Barnes after the shooting no longer remembered if Barnes identified Evans as the shooter. Two individuals who were near the janitor at the time did not hear Barnes identify Evans as the shooter. One of those witnesses was in the building just before the shooting and testified that she did not see Barnes and Evans exchange angry words before they went outside. While police found Evans's sweatshirt in a truck bed half a block from the shooting location, the sweatshirt had no blood or gunpowder residue. No one else saw Evans shoot Barnes or saw Evans with a gun. A detective also testified that rival gang members sometimes shoot each other, and, because Barnes and Evans were in rival gang territory when Evans was shot, a rival gang member could have been the shooter.

The record showed that Barnes had an intermittent romantic relationship with Evans's wife. Seconds after leaving the building with Evans, Barnes was shot three times. And even though Evans and Barnes were friends, Evans and his wife left the building immediately after Barnes was shot.

The record required the jury to resolve the conflicting evidence and make credibility determinations about witnesses giving contradictory testimony. *See Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) ("A jury's credibility

6

determinations are therefore entitled to near-total deference under *Jackson*.").  The evidence, largely circumstantial, was sufficient to support the premeditated attempted murder conviction.  *United States v. Begay*, 673 F.3d 1038, 1043 (9th Cir. 2011) ("Premeditation can be proved by circumstantial evidence.").

On this record, a federal habeas court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any . . . conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson*, 443 U.S. at 326.  The judgment that there was sufficient evidence for a reasonable jury to conclude that Evans was the shooter was not objectively unreasonable.

**AFFIRMED**.